UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-cv-02705-JMS-MPB |
| | ) |
| MICHAEL ROGERS, | ) |
| TROY RIGGS, | ) |
| CITY OF INDIANAPOLIS, | ) |
| | ) |
| Defendants. | ) |

## **ENTRY**

Mr. Johnson brought this lawsuit in September 2016, alleging a variety of state-law and federal claims after Defendant Michael Rogers allegedly kicked and broke his leg while he was handcuffed. [Filing No. 1-1.] Among other things, Mr. Johnson seeks "[d]amages for emotional distress" and "pain and suffering" as a result of the incident. [Filing No. 71 at 1-2.] Seeking discovery on Mr. Johnson's emotional distress claim, Defendants moved to compel Mr. Johnson to provide signed HIPPA consent forms to allow Defendants to obtain medical records concerning Mr. Johnson's mental health treatment. [Filing No. 68.] Magistrate Judge Matthew Brookman granted Defendants' Motion to Compel, finding that Mr. Johnson had waived his psychotherapist-patient privilege by placing his mental and emotional health at issue. [Filing No. 77.] Mr. Johnson objects to Magistrate Judge Brookman's Order, arguing that the order violates his privilege

protection.[1] [Filing No. 79.] But Mr. Johnson's Objections gloss over the deferential standard that applies to review of a Magistrate Judge's nondispositive decision. Mr. Johnson has fallen far short of demonstrating that Magistrate Judge Brookman's decision was the product of clear or legal error. To the contrary, the Court finds Magistrate Judge Brookman's Order to be thorough and well-reasoned, and therefore **OVERRULES** Mr. Johnson's Objections thereto.

I.
STANDARD OF REVIEW

Review of a magistrate judge's decision on a nondispositive motion is deferential, and the Court may sustain an objection to such an order only where it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous "only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Industries Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Pain Center of SE Ind., LLC v. Origin Healthcare Solutions, LLC,* 2014 WL 6674757, *2 (S.D. Ind. 2014) (citations and quotation marks omitted).

---

[1] Throughout Mr. Johnson's filings, he refers to the judicial officer who ruled on Defendants' Motion to Compel as "the Magistrate," [*e.g.*, Filing No. 80 at 6; Filing No. 83 at 2], and has styled his objection as an "appeal," [*e.g.*, Filing No. 79 at 1]. Since the passage of the Judicial Improvements Act of 1990, the "first echelon of the Federal judiciary," H.R. Rep. No. 90-1629, at 11 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4252, 4254, has held the title of United States Magistrate Judge. Pub. L. 101-650, § 321, 104 Stat. 5089, 5117; *see* 28 U.S.C. §§ 631-39. Moreover, Rule 72 permits a party to "serve and file *objections*" to a magistrate judge's nondispositive order, Fed. R. Civ. P. 72(a) (emphasis added); the practice of "appealing" a magistrate judge's order to a district judge was abolished in 1997 and, in any event, was available only in consent cases. *See* Fed. R. Civ. P. 73(d), 74 (1996) (repealed 1997). Consistent with the statutory language, and in recognition of the fact that magistrate judges are judicial officers without which the "work of the federal court system would grind nearly to a halt," *Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1939 (2015), the Court construes Mr. Johnson's appeal as an objection and refers to Magistrate Judge Brookman by his proper statutory title.

"District courts have broad discretion in discovery matters." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001). The scope of discovery is broad, with a "strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). But it is limited from the outset to relevant, "nonprivileged matter." Fed. R. Civ. P. 26(b)(1). Evidentiary privileges, however, are narrowly construed because they withhold relevant information from the trier of fact. *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981).

## II.
### BACKGROUND

Mr. Johnson filed his Complaint in state court on September 9, 2015, alleging that Mr. Rogers kicked and broke his leg while he was handcuffed. [Filing No. 1-1 at 4.] Mr. Johnson pursues several legal theories, including an excessive force claim under 42 U.S.C. § 1983 against Mr. Johnson, *Monell* claims against Chief Troy Riggs and the City of Indianapolis, and state-law negligence and battery claims against Mr. Rogers and the City. [Filing No. 1-1 at 5-8.] Mr. Johnson's Notice of Tort Claim, incorporated by reference into his Complaint, [Filing No. 1-1 at 4], alleges that he has "sustained certain . . . emotional injuries" and seeks damages for "emotional distress." [Filing No. 1-1 at 10.] Defendants removed this matter on October 10, 2016 on the basis of this Court's federal question jurisdiction. [Filing No. 1.]

On June 2, 2017, Mr. Johnson filed his Preliminary Witness and Exhibit List, which included as potential witnesses "[a]ny and all of Plaintiff's treating physicians and healthcare providers [who] will testify as to his injuries, emotional condition[,] and treatment, including but not limited to those identified in the medical records and those listed below." [Filing No. 53 at 3.]

On March 9, 2018, Defendants filed their Motion to Compel, requesting among other things that Mr. Johnson be compelled to sign HIPPA consent forms to allow Defendants to obtain

3

Mr. Johnson's medical records. [Filing No. 68.] On March 20, 2018, contemporaneous with his response brief, Mr. Johnson filed an "Amended Statement of Special Damages," stating that he was seeking "[d]amages for emotional distress . . . . The Plaintiff is not making a claim that his injuries in the present case resulted in a mental disease. He is simply making general claims for pain and suffering and emotional distress which would typically accompany this type of injury for anyone." [Filing No. 71 at 1-2.] The Statement continues: "After conferring with his mental health professionals, the Plaintiff has decided to withdraw his claim for loss of past and future earnings in order to avoid the psychological harm and potential relapse which would occur if personal and private mental health issues were dredged up during the course of discovery." [Filing No. 71 at 2.]

On April 20, 2018, Magistrate Judge Brookman issued his Order granting Defendants' Motion in relevant part and ordering Mr. Johnson to sign and return HIPPA authorization forms for Community Health Services, Eskenazi Hospital, and the Martindale-Brightwood Health Center for October 30, 2014 to the present.[2] [Filing No. 77 at 14.] On May 4, 2018, Mr. Johnson filed his Objections to the portion of the Magistrate Judge's Order requiring him to provide the signed authorization forms. [Filing No. 79.] Mr. Johnson's Objections are fully briefed and ripe for decision.

### III.
### DISCUSSION

The Magistrate Judge held that Mr. Johnson could be compelled to provide a signed medical release, that Mr. Johnson waived the psychotherapist-patient privilege by placing his

---

[2] The Magistrate Judge also denied Defendants' Motion to the extent it requested a release for all of Mr. Johnson's records and granted Defendants' request to compel contact information for Mr. Johnson's family members who are listed as witnesses. [Filing No. 77 at 12-14.] Neither party objects to these rulings.

4

emotional condition at issue, and that state-law restrictions on medical documents did not apply. [Filing No. 77 at 4-13.] The Court addresses each of Mr. Johnson's Objections in turn.

### A. Ability to Compel Signed Release

Mr. Johnson first objects to the Magistrate Judge's holding that he could be compelled to sign a medical release. [Filing No. 80 at 5.] Mr. Johnson asserts that "a request for production of documents is not the proper means for obtaining a signed medical release—even in cases where a release is appropriate." [Filing No. 80 at 5.]

Properly characterized, Mr. Johnson's first argument is that the Magistrate Judge erred in concluding that the signed release forms fall within the scope of Rule 34(a) governing requests for production. Rule 34 "provides the common sense limitation that a party may only be compelled to produce . . . information 'in the responding party's possession, custody, or control.'" *Williams v. Angie's List*, 2017 WL 1318419, at *2 (S.D. Ind. 2017) (quoting Fed. R. Civ. P. 34(a)(1)). "[T]he Seventh Circuit has embraced the prevailing definition of 'control' as 'a legal right to obtain,'" a standard which is "certainly broad enough to encompass a contractual right to obtain documents." *Id.* (quoting *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014)) (collecting cases).

Mr. Johnson relies upon a District of Nevada case in which the court held that a party could not be compelled to create a list of "all individuals [who] have handled [p]laintiff's uninsured motorist claim." *Fadem v. Am. States Preferred Ins. Co.*, 2014 WL 202176, at *2 (D. Nev. 2014). But that case is inapposite because Defendants are not asking Mr. Johnson to create a record that does not exist. Rather, as the Magistrate Judge observed, "requiring execution of authorizations is a customary manner of permitting access to records under a party's control." [Filing No. 77 at 4 (quoting *Stringer v. Scott*, 1993 WL 372211 (N.D. Ill. 1993))]; *see Daggett v. Wollangk*, 189 F.

App'x 504, 505 (7th Cir. 2006) (affirming dismissal as sanction for refusal to provide signed medical authorization). This is because the discovery Defendants actually seek is the medical records; the signed release form is merely the means for Defendants to obtain that discovery. And both the signed release form and the medical records that Defendants will be able to obtain as a result of the release are well within Mr. Johnson's "legal right to obtain." *Thermal Design*, 755 F.3d at 839. Indeed, as *Williams* and the cases cited therein demonstrate, responding to a Rule 34 request may require a party to exercise its contractual rights to obtain documents not within its immediate possession—a task that may require signing multiple documents and a burden that may frequently be more onerous than the signed authorizations at issue here. The Magistrate Judge's holding that Mr. Johnson may be compelled to provide a signed release is without error, clear or otherwise, and the Court therefore **OVERRULES** Mr. Johnson's Objection as to this issue.

### B. Applicability of Psychotherapist-Patient Privilege

Mr. Johnson next argues that the Magistrate Judge clearly erred in finding that Mr. Johnson has waived the psychotherapist-patient privilege in this case, asserting that he seeks damages for ordinary pain, suffering, and emotional distress "which would typically accompany" the broken leg that he suffered. [Filing No. 80 at 6.]

Because Mr. Johnson's § 1983 claims are governed by federal law, the Magistrate Judge correctly turned to federal law for the applicable law of privilege. Fed. R. Evid. 501; *Mem'l Hosp. for McHenry Cty v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). Federal common law recognizes the psychotherapist-patient privilege, which protects "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). However, "[l]ike other testimonial privileges, the patient may of course waive the protection." *Id.* at 15 n.14.

6

As the Magistrate Judge explained, district courts across the country have employed a variety of standards for deciding when a party waives the privilege. [Filing No. 80 at 5-7] (collecting cases).] The Seventh Circuit in *Doe v. Oberweis Dairy* articulated a broad view of waiver: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." 456 F.3d 704, 718 (7th Cir. 2006). Despite this "straightforward and unequivocal" statement, some district courts within the Seventh Circuit have required more than a claim for emotional distress damages to find waiver. *Taylor v. Chicago*, 2016 WL 5404603, at *3 (N.D. Ill. 2016) (collecting cases). Some have applied what has been called the "narrow approach," holding that "a plaintiff waives the privilege only when she affirmatively relies on her communications with the psychotherapist or calls the therapist as a witness." *Id.* at *2. Still others have applied what the *Taylor* court calls the "most prevalent approach," looking to see whether the plaintiff "is seeking anything more than mere 'garden-variety' emotional damages." *Id.* This "garden-variety" approach "is not easy to pin down. The most straightforward definition [of garden-variety damages] is 'the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized.'" *Id.* (quoting *Kunstler v. City of New. York*, 2006 WL 2516625, at *9 (S.D.N.Y. 2006)).

The Magistrate Judge concluded based on *Oberweis* that the "Seventh Circuit views [the privilege] waived either whenever emotional distress damages or, at most, when more than 'garden variety' claims of emotional distress are sought." [Filing No. 77 at 7-8.] The *Taylor* court, in its thorough analysis of the issue, went one step further and held that *Oberweis* mandates the broad approach to waiver. 2006 WL 5404603, at *3. *Taylor* observed that *Oberweis* used unequivocal language and was aware of the three approaches to waiver at the time of its opinion, even citing to a law review article that discussed the approaches. *Id.*

Magistrate Judge Brookman, however, declined to determine which (if any) approach *Oberweis* mandates, instead concluding that Mr. Johnson had waived the privilege under either the broad or middle-ground "garden variety" approach:

> [T]his does not need to be determined today. Even if the more lenient "middle-ground" approach is the position of this Circuit, on this record Johnson has waived his psychotherapist-patient privilege. In his complaint, Johnson alleges that as a result of the incident in question he suffered "temporary and permanent injuries," including emotional pain and mental distress. His special damages claims, amended after Defendants' motion to compel was filed, include "emotional distress." Moreover, his preliminary exhibit and witness list includes "[a]ny and all [of his] treating physicians and healthcare providers [to testify] to his injuries," including his "emotional condition and treatment." His list also affirms that he intends to call physical and mental healthcare providers from Eskenazi Health, Martindale-Brightwood Health Center, Indianapolis EMS, and Community Health Services.
>
> Plaintiff cannot allege emotional damages, include these witnesses and records in his Preliminary Witness and Exhibit list, and assert they will testify as to his emotional condition and treatment, yet still insist on maintaining his psychotherapist-patient privilege. To protect records would allow Plaintiff to proceed with his claims on unequal terms.

[Filing No. 77 at 8 (citations and footnote omitted).]

The crux of Mr. Johnson's argument is that he did not waive his privilege because he is "alleg[ing] only generic 'pain and suffering' and 'emotional distress and mental pain,'" [Filing No. 80 at 2]—in other words, that his claim is only for garden-variety damages. But even granting Mr. Johnson the generous assumption that *Oberweis* could tolerate this middle-road approach, as the Magistrate Judge did, Mr. Johnson has fallen far short of demonstrating that the Magistrate Judge's findings are clearly erroneous or contrary to law. While Mr. Johnson emphasizes that his Amended Statement of Special Damages is limited to "pain and suffering and emotional distress which would typically accompany this type of injury for anyone," [Filing No. 71 at 2], the Magistrate Judge's conclusion is amply supported by Mr. Johnson's Complaint, which seeks damages for mental distress due to "permanent injuries," [Filing No. 1-1 at 4], and—most

critically—his witness list which includes "[a]ny and all of Plaintiff's treating physicians and healthcare providers [who] will testify as to his injuries, emotional condition[,] and treatment," [Filing No. 53 at 3]. The fact that Mr. Johnson lists as potential witnesses "any and all" of his mental health professionals belies his new position that he only suffered and seeks damages for "garden variety" emotional distress.

Finally, the Court agrees with the Magistrate Judge's observation that Mr. Johnson's privacy concerns may be addressed with a protective order limiting the disclosure of the medical records.³ [Filing No. 77 at 8-9.] Moreover, the Magistrate Judge also correctly noted that the discoverability of the mental health records does necessarily mean that the records will be admissible at trial. [Filing No. 77 at 8-9.] These were points emphasized by the Seventh Circuit in *Oberweis*, 456 F.3d at 718 ("The judge can seal the plaintiff's psychiatric records and limit their use in the trial (which is public) to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records."), and the ability of the Court to protect Mr. Johnson's privacy by means other than restricting discovery adds further support to the Magistrate Judge's conclusion.

The Magistrate Judge neither clearly erred nor committed an error of law in concluding that Mr. Johnson waived the psychotherapist-patient privilege in this case. The Court therefore **OVERRULES** Mr. Johnson's Objection to this finding and will direct the parties to confer and

---

³ Mr. Johnson also expresses concerns that his "past problems will be the subject of questioning and investigation." [Filing No. 80 at 10.] Should Mr. Johnson believe that such lines of questioning would result in undue "annoyance, embarrassment, [or] oppression," Mr. Johnson may, after meeting and conferring with Defendants and attempting to resolve any remaining issues with the Magistrate Judge, move for a protective order to limit the scope of his deposition examination. Fed. R. Civ. P. 26(c)(1). This, however, is not part of the protective order anticipated by the Court in the Conclusion, below, but instead should be separately addressed by conferences and motions practice should the need arise.

propose a protective order that would adequately address the important privacy concerns raised by Mr. Johnson.

### C. Applicability of Indiana Law

Mr. Johnson's final Objection is that Defendants, "as state actors, . . . should be bound by Indiana law and not allowed to escape the limitations and protections of Indiana law imposed on them by the [Indiana] legislature." [Filing No. 80 at 8.] Mr. Johnson cites to the Indiana statute setting forth the standard for overcoming the psychotherapist-patient privilege and the Indiana procedures for obtaining such records. [Filing No. 80 at 7-8.] Mr. Johnson argues that comity requires that the Court abide by Indiana's substantive and procedural restrictions.

The Court may be brief in addressing this final argument, because the Magistrate Judge correctly ruled that, "[t]o the extent that the Indiana legislature requires a separate procedure for the discovery of information[,] federal law governs such matters of procedure in this Court." [Filing No. 77 at 10 (citing *Patton v. Novartis Consumer Health, Inc.*, 2005 WL 1799509, at *2 (S.D. Ind. 2005)).] Moreover, the authority discussing the influence of "comity" on federal privilege treats it only as a factor in considering whether a privilege applies or whether the burden from a particular request is undue—no decision has gone as far as to suggest that comity would ever require a federal court to enforce state-law procedures for obtaining documents. *Cf. Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004). Such a holding would wreak havoc in ways that *Erie* and Rule 1 do not tolerate. Fed. R. Civ. P. 1 ("These rules govern the procedures in all civil actions and proceedings in the United States district courts . . . . They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *Erie R.R. Co. v. Tompkins*, 304 U.S.

10

64 (1938); *see also* *Sowell v. Dominguez*, 2013 WL 5913806 (N.D. Ind. 2013) (holding that Indiana procedures for document production do not apply to federal claims in federal court).

Finally, Indiana's substantive standards for psychotherapist-patient privilege also have no bearing on this case. Mr. Johnson argues that Indiana follows the middle-ground approach to waiver, addressed above. But the Court has already concluded that Mr. Johnson has waived the privilege under this middle-ground approach. To the extent the Indiana privilege is more protective than the federal privilege as recognized in *Oberweis*, the plaintiff asserting the privilege "must confront the general obstacle that evidentiary privileges are disfavored because they impede fact-finding by excluding relevant information." *Hamdan v. Indiana Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018). Mr. Johnson's general assertions of "comity" do not overcome this obstacle and, as the Court has already explained, the privacy interests which the Indiana privilege is designed to protect may be accommodated by other means, such as a protective order. *See, e.g.*, *id.* at 421 (assessing whether recognition of state privilege in the particular case would further the policy underlying the privilege). The Court therefore **OVERRULES** Mr. Johnson's final Objection.

## IV.
### CONCLUSION

The Magistrate Judge acted well within his discretion in concluding that Mr. Johnson may be compelled to sign a HIPPA release form and that he waived the psychotherapist-patient privilege in this case. The Court therefore **OVERRULES** Mr. Johnson's Objections [79] to the Magistrate Judge's Order granting in part Defendants' Motion to Compel.

The Court recognizes that the medical records contain sensitive information regarding Mr. Johnson's health and background. Therefore, the Court **ORDERS** the parties to meet and confer on or before **June 5, 2018** regarding an appropriate protective order to govern use of medical

11

records in this case.  As a starting point, the parties may wish to consult the Uniform Protective Order adopted by the judges of this Court, available at http://www.insd.uscourts.gov/sites/insd/files/Uniform%20Protective%20Order.docx.  The Court further **ORDERS** the parties to contact the Magistrate Judge on or before **June 5, 2018** to resolve any issues should they not reach a complete agreement as to the contents of the protective order.  Finally, the Court **ORDERS** Mr. Johnson to provide the signed HIPPA authorization forms for Community Health Services, Eskenazi Hospital, and the Martindale-Brightwood Health Center, covering the period from October 30, 2014 to the present, within **seven days** from the entry of the protective order.

Date: 5/23/2018

*(signature)*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**