UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIMOTHY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02705-JMS-MPB |
| | ) | |
| MICHAEL ROGERS, | ) | |
| TROY RIGGS, | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Defendants. | ) | |

## **ENTRY**

Plaintiff Timothy Johnson brought this lawsuit after an altercation during his arrest left him with a compound leg fracture. The parties agree on this, and not much else. Mr. Johnson contends that Defendant Officer Michael Rogers used excessive force in kicking his leg after he stood up (despite orders to remain seated), ostensibly to get off of the cold grass. But Mr. Johnson's version of events is flatly and unequivocally contradicted by the surveillance video from outside the Community Health Services where the incident occurred. Moreover, though Mr. Johnson now contends that he was just standing in the grass when Officer Rogers engaged him, Mr. Johnson ultimately pleaded guilty to resisting law enforcement. Mr. Johnson's Fourth Amendment claim under § 1983 therefore fails to clear the double barriers posed by qualified immunity and *Heck v. Humphrey*, 512 U.S. 477 (1994). Mr. Johnson's state law claims also fall short under the Indiana Tort Claims Act and on their merits.

But in evaluating Defendants' Motion for Summary Judgment, the Court is in the unfortunate situation of first having to address several ancillary motions regarding briefing. Then, the Court must parse Mr. Johnson's myriad evidentiary objections to the evidence cited in Defendants' briefing. Because Defendants failed to correct the easily fixable evidentiary issues

identified by Mr. Johnson, and because Mr. Johnson did not substantially augment this record with his own filings, the Court is left with an extremely sparse record from which to draw its factual basis. Despite doing themselves no favors in failing to correct the evidentiary shortcomings, the videographic evidence places this case beyond the purview of a jury and demonstrates that Defendants are entitled to judgment as a matter of law. Therefore, after resolving the ancillary matters and evidentiary objections, the Court **GRANTS** Defendants' Motion for Summary Judgment. [Filing No. 106.]

## I.
## PROCEDURAL HISTORY

Mr. Johnson initially filed this lawsuit in Marion Superior Court on September 9, 2016, naming Indianapolis Metropolitan Police Department ("IMPD") Officer Rogers in his individual and official capacities, former IMPD Chief Troy Riggs in his official capacity, and the City of Indianapolis ("the City"). [Filing No. 1-1 at 2-9.] In his Complaint, Mr. Johnson alleges that Officer Rogers used excessive force by kicking him while handcuffed. [Filing No. 1-1 at 4.] As a result, Mr. Johnson alleges a Fourth Amendment excessive force claim against Officer Rogers; a "failure to train" *Monell* claim against Chief Riggs and the City; a claim under *Monell* that IMPD's policies, practices, procedures, and customs "permitted and encouraged" excessive force, also against Chief Riggs and the City; a state-law negligence claim against Officer Rogers and the City; and a state-law battery claim against Officer Rogers and the City. [Filing No. 1-1 at 2-8.] Defendants removed this matter to this Court on October 10, 2016. [Filing No. 1.]

On October 18, 2018, Defendants moved for summary judgment on all of Mr. Johnson's claims. [Filing No. 106.] That motion, as well as several ancillary motions and objections, are ripe for the Court's consideration and are addressed in turn below.

Three ancillary motions pend before the Court, two of which impact the briefing the Court may consider in ruling upon Defendants' Motion for Summary Judgment.

### A. Motion for Leave to File Amended Brief

The first is Mr. Johnson's Motion for Leave to File His Amended Brief in Opposition to Defendants' Motion for Summary Judgment, [Filing No. 124], to which he attaches his proposed amended response brief, [Filing No. 124-2], and proposed amended appendix in support, [Filing No. 124-1]. Mr. Johnson explains that he was unable to complete a proper response brief by the original deadline because of an impending trial in state court which required counsel's attention and because he received discovery close to his deadline for responding to summary judgment which required review. [Filing No. 124 at 1-3.] Defendants oppose Mr. Johnson's Motion, arguing that Mr. Johnson delayed seeking certain discovery, that they would be prejudiced by an amended brief, that the amended brief fails to comply with the Local Rules, and that the Motion improperly attempts to "sidestep this Court's denial of Plaintiff's motions for extension of time." [Filing No. 131 at 1-6.] In reply, Mr. Johnson disputes Defendants' argument that he delayed discovery, disputes Defendants' claim of prejudice, and argues that the Court never addressed the merits of his motions for extension of time, but instead denied them as moot. [Filing No. 135.]

As the Seventh Circuit has explained in a slightly different context, "In the normal course of events, justice is dispensed by the hearing of cases on their merits . . . ." *Schilling v. Walworth Cnty. Park & Planning Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986). And without wading into the sideshow of the parties' ongoing discovery disputes, Mr. Johnson's counsel's trial schedule provides a legitimate basis for requesting additional time to prepare an adequate response brief. That is not to say that Mr. Johnson's counsel did an exemplary job of managing this situation. For

starters, Mr. Johnson's counsel waited 22 days after Defendants filed their Motion for Summary Judgment to file his Motion for Extension of Time, [*see* Filing No. 112], despite only having 28 days allotted to file the response, S.D. Ind. L.R. 56-1(b), and despite surely knowing about his impending state court trial date well in advance of the response deadline. Mr. Johnson's counsel also surely understood that, absent court order, Defendants were entitled to a 14-day window for responding to his Motion for Extension of Time from the date he filed the Motion. *See* S.D. Ind. L.R. 7-1(c)(3)(A). Mr. Johnson could have substantially increased the likelihood of receiving a ruling on the merits of his Motion for Extension of Time by simply proactively filing the motion in the first 14 days of his summary judgment response time to allow time for Defendants to respond and for the Court to rule. Of course, this will not always be practicable where the need for additional time is unforeseeable. But this is not such a case.

Nonetheless, Mr. Johnson has the better of the argument. First, Mr. Johnson is correct that the Court never ruled on the substance of his Motions for Extension of time. Rather, the Court denied the motions as moot after Mr. Johnson timely filed a response to Defendants' Motion for Summary Judgment. [Filing No. 120; Filing No. 121.] Defendants are incorrect to suggest that Mr. Johnson's instant Motion for Leave is somehow improper or filed in bad faith. Second, Mr. Johnson has, as explained above, set forth a legitimate basis for requiring additional time to complete a proper brief. Third, given the ultimate result in this case, Defendants will not be prejudiced by consideration of the Amended Response. But most importantly, the Court strongly prefers to resolve cases on their merits, and the considerations identified by Defendants are not outweighed by this preference. The Court therefore **GRANTS** Mr. Johnson's Motion to Amend, [Filing No. 124], and has fully considered the arguments raised in the Amended Response, [Filing No. 124-2], in addressing Defendants' Motion for Summary Judgment.

### B. Motion to Strike

Second, Defendants move to strike most of Mr. Johnson's surreply, arguing that it exceeds the scope of a permissible surreply under Local Rule 56-1(d). [Filing No. 133.] Given the ultimate result of Defendants' Motion for Summary Judgment, and the Court's interest in having a fully developed record, the Court **DENIES** Defendants' Motion to Strike. The Court has considered Mr. Johnson's surreply in ruling herein; to the extent it went beyond addressing Defendants' new evidence raised in reply, it added little to Mr. Johnson's arguments.

### C. Request for Oral Argument

Finally, Mr. Johnson has filed a Request for Oral Argument, [Filing No. 129], which Defendants oppose, [Filing No. 132]. The Court finds that the undisputed videographic evidence and well-established legal doctrines at issue obviate any need for additional, oral presentations on the issues raised in Defendants' Motion for Summary Judgment. In the main, the case requires nothing more than a straightforward application of qualified immunity, *Heck*, and state tort doctrines to the events depicted in the surveillance video, as informed by the limited portions of factual background which are supported by the admissible evidence. The Court therefore **DENIES** Mr. Johnson's Request for Oral Argument.

### III.
### EVIDENTIARY OBJECTIONS

The Court next addresses the scope of the evidence which may be properly considered in evaluating Defendants' Motion for Summary Judgment. Mr. Johnson lodges what are largely authenticity objections to all or parts of Defendants' exhibits 6 through 10 and 14, found at Filing No. 106-6 through Filing No. 106-10 and Filing No. 106-14, [Filing No. 124-2 at 1-5], and to much of Defendants' additional evidence tendered on reply at Filing No. 127-1 and Filing No. 127-2, [Filing No. 128 at 6-7]. Mr. Johnson additionally objects to Defendants' reliance upon the

affidavit of Officer Aaron Sullivan, which Mr. Johnson maintains constitutes undisclosed expert testimony.  [Filing No. 124-2 at 4-5.]

In reply, Defendants argue that they properly supported their factual contentions with citations to record evidence in compliance with the Federal Rule of Civil Procedure 56(c)(1)(A), Local Rule 56-1(e), and the undersigned's Practices and Procedures.  [Filing No. 126 at 2-5.] Specifically, Defendants argue that Mr. Johnson's objections should be overruled because certain documents were "tendered . . as exhibits tendered during [a] deposition" and because others are judicially noticeable.  [Filing No. 126 at 3-4.]  Defendants also argue that the plea agreement and partial transcript from the change-of-plea hearing are subject to judicial notice.  [Filing No. 126 at 4.]  Finally, Defendants argue that Officer Sullivan's affidavit contains only lay testimony regarding the policies and training in place at the time of the incident.  [Filing No. 126 at 4-5.]

### A. Authenticity Objections

First and foremost, it is clear that Defendants have operated under a misunderstanding of what is required of evidence on summary judgment.  Compliance with Rule 56(c)(1)(A), Local Rule 56-1(e), and the Practices and Procedures are necessary but not sufficient conditions that must be met for evidence to be considered on summary judgment.  Thus, Defendants' recitation of the law in their reply brief is incomplete.  They are correct that parties must cite "to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and must "support each fact the party asserts in a brief with a citation" to evidence, S.D. Ind. L.R. 56-1(e).  They are also correct, as a general matter, that the types of submissions which may be considered on summary judgment include materials disclosed in discovery or tendered at a deposition.  *Cf.* S.D. Ind. L.R. 56-1(e) (noting that parties may support factual assertions with citations "to a discovery response, a deposition, an affidavit, or other admissible evidence").  But these requirements explain only how

factual assertions must be supported. They do not address what makes the evidence cited in support of those factual assertions substantively admissible on summary judgment. As to that issue, the case law is clear: "In [considering] summary judgment, a court may consider any material that would be admissible or usable at trial, including **properly authenticated and admissible** documents or exhibits." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (emphasis added) (internal quotations omitted). Put another way, Defendants' argument regarding compliance with the citation provisions has it backwards—"[a]dmissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (collecting authorities).

To assess admissibility, courts turn to the Federal Rules of Evidence. *See id.*; Fed. R. Evid. 1101. As set forth above, most of Mr. Johnson's objections deal with authentication. In general, "[t]o satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) sets forth many forms of evidence that one may offer to meet this burden, though many documents of the type offered by Defendants may be self-authenticating under Rule 902. Public documents and records of regularly conducted activities are generally self-authenticating (requiring no additional evidence to demonstrate authenticity) if accompanied by seal or certification. *See, e.g.*, Fed. R. Evid. 902(1)-(2), (4), (11).

The problem for Defendants is that the challenged exhibits lack any evidence supporting authentication. Exhibits 6 through 10 and 14, which are attachments to Filing No. 106, purport to be internal affairs transcripts (Exhibits 6 and 7), documents relating to a "Citizens Police Complaint" (Exhibit 8, except page 4), Mr. Johnson's guilty plea agreement (exhibit 9), an excerpt

from Mr. Johnson's change-of-plea hearing (exhibit 10), and documents which purport to be Officer Rogers' personnel records (exhibit 14). Aside from the inclusion of an index from the depositions at which they were offered and other miscellaneous discovery materials, Defendants' evidentiary submissions on reply appear to be mere duplicates of Exhibit 8, [*see* Filing No. 127-2 at 5-11], and Exhibit 14, [*see* Filing No. 127-1 at 21-50]. Absent from any of these filings are any seals, certificates, or signatures that would allow for self-authentication under Rule 902(1), (2), and (4). Also absent is any independent evidence—such as sworn declarations—suggesting that the documents are "what the proponent claims" they are under Rule 901(a) and (b). Defendants' only responses to these objections are that they were offered at a deposition or produced to Mr. Johnson in discovery. But neither response has anything to do with the authenticity of the documents. Depositions, for example, are not limited to questioning about authentic documents. And production in discovery does not preclude Mr. Johnson from challenging authenticity—again, the threshold issue before the Court.

The Seventh Circuit very recently "examine[d] . . . how district courts manage summary judgment practice, particularly with respect to the presentation of evidence for purposes of summary judgment." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 930-31 (7th Cir. 2018) (Hamilton, J.). In its in-depth examination of summary judgment procedure, the court addressed how situations much like this one may be handled, observing:

> It is not unusual for parties to submit documentary evidence to support or oppose summary judgment, as happened here, without fully authenticating the documents with affidavits thorough enough to overcome any and all evidentiary objections that could be raised.
>
> When that happens—when one side fails to cross all evidentiary t's and dot all procedural i's—it is also not unusual for opposing lawyers to choose to overlook available evidentiary or other procedural objections. Lawyers should know their cases. Courts are entitled to rely on lawyers to decide which potential objections are worth raising and which are not. This is especially so when many such defects

in summary judgment evidence could be cured quickly with a supplemental affidavit or two. Neither the rules of evidence nor the rules of civil procedure require lawyers or judges to raise all available evidentiary objections.

*Id.* at 931-32 (citations omitted). But the court also anticipated that a party might well raise such evidentiary objections, as they are entitled to do. When that happens, the other party is entitled to respond, perhaps "with a supplemental affidavit or two[,] to cure the problems." *Id.* at 932. "Nevertheless"—even where it is abundantly clear that the problems could have easily been cured by submission of authenticating affidavits or self-authenticating certifications—"when an objection is raised, the court must apply Rule 56(e) and sustain the objection." *Elghanmi v. Franklin Coll. of Ind., Inc.*, 2000 WL 1707934, at *1 (S.D. Ind. 2000) (Hamilton, J.) (cited with approval in *Cehovic-Disneuf*, 895 F.3d at 932).

Here, it is abundantly clear that most if not all of the authenticity issues in Defendants' exhibits could have been cured with affidavits attesting to their authenticity or certifications and signatures from the appropriate public officials. The unsworn statements in the internal affairs transcriptions could have been brought within the purview of Rule 56(c)(1) with affidavits from the interviewees attesting, under penalty of perjury, that the statements are true. But instead of simply curing these deficiencies, Defendants replied with inapposite arguments about the documents' use in depositions.

Defendants' remaining argument is that the documents relating to Mr. Johnson's guilty plea are subject to judicial notice. Rule 201 allows the Court to take judicial notice of adjudicative facts which are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As noted above, the documents themselves (the plea agreement and the change-of-plea transcript) lack authenticating evidence under Rule 901(a) or seals or certifications which would render the

documents self-authenticating under Rule 902. In any event, Rule 201 permits the Court to take judicial notice of facts, not documents. *Cf. In re Lisse*, 905 F.3d 495, 497 (7th Cir. 2018) (Easterbrook, J., in chambers) ("That document is not subject to judicial notice because it is not evidence of an adjudicative fact. . . . If the document were being offered just to show that it had been filed, that fact might be subject to judicial notice, but the 'Request' does not suggest that appellant wants this court to take notice that a particular document was filed on a specific date in some other tribunal.").

What Defendants are actually requesting is that the Court take judicial notice of the charges to which Mr. Johnson pleaded guilty in *State v. Johnson*, No. 49G09-1411-F6050357 (Marion Super. Ct. judgment entered Mar. 2, 2017), and any admissions Mr. Johnson may have made during the change-of-plea hearing. The Court may properly grant the former request, inasmuch as Mr. Johnson does not dispute that he was convicted of resisting law enforcement under Indiana Code section 35-44.1-3-1(a)(1) and inasmuch as the judgment and "Sentencing Order" are public records not subject to reasonable dispute. The Court may not, however, grant the second request. While the contents of the transcript may be the type of evidence subject to judicial notice, it cannot be "readily determined" because the transcript appears nowhere on the publicly-available docket. *See State of Indiana v. Timothy Johnson*, https://public.courts.in.gov/mycase#/vw/Search (in "Case Number" field enter "49G09-1411-F6-050357" and press "Search") (last accessed Jan. 11, 2019). Without ready access to the document, the Court, as a practical matter, is unable to take judicial notice of the facts contained in it. The Court therefore declines to take judicial notice of the state-court proceedings beyond the fact of Mr. Johnson's guilty plea and convictions under Indiana Code sections 35-44.1-3-1(a)(1) and 35-45-2-1(a)(2).

These are problems of Defendants' own making. Had Defendants simply replied to Mr. Johnson's objections with authenticating affidavits or self-authenticating versions of the previously-tendered exhibits, and proffered declarations adopting unsworn statements under oath, they could have addressed most of Mr. Johnson's objections. But on this record, with the exception of the limited judicial notice of Mr. Johnson's guilty plea and convictions for resisting law enforcement and intimidation, "the court must apply Rule 56(e)" and **SUSTAIN** Mr. Johnson's objections to Exhibits 6 through 10 and 14 and the duplicate exhibits offered on reply. *Elghanmi*, 2000 WL 1707934, at *1.

### B. Objection to Officer Sullivan's Affidavit

Mr. Johnson's final objection is to Exhibit 11, [Filing No. 106-11], the affidavit of Officer Sullivan, which Mr. Johnson argues should be excluded as undisclosed expert testimony. [Filing No. 124-2 at 4.] In reply, Defendants do not dispute that Officer Sullivan was not disclosed as an expert, but instead argue that Officer Sullivan's affidavit contains only lay testimony. [Filing No. 126 at 4-5.]

As the Seventh Circuit has explained,

Lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field. We have explained that a law-enforcement officer's testimony is a lay opinion if it is limited to what he observed or to other facts derived exclusively from a particular investigation. On the other hand, an officer testifies as an expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the jury based on that specialized knowledge.

*United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) (alterations, quotations, and citations omitted). The court acknowledged, however, that in application the "distinction between expert and lay testimony is often far from clear." *Id.*

Officer Sullivan's affidavit straddles this divide, meaning that some of his observations must be excluded as undisclosed expert testimony, while others may be considered in evaluating Defendants' Motion for Summary Judgment. Officer Sullivan's observations about what happened, which are entirely based upon his review of the surveillance footage, depend upon him "mak[ing] connections for the [court] based on [his] specialized knowledge." *Id.* This includes paragraphs 19, 20, and 25 through 28, [Filing No. 106-11 at 3-4], all of which offer Officer Sullivan's assessment and interpretation of the incident. The other paragraphs addressing the training officers undergo regarding use-of-force techniques constitute permissible lay testimony, based upon Officer Sullivan's personal experience as a use-of-force instructor. These paragraphs do not opine that Officer Rogers complied with all of the training and policies, but Officer Sullivan's testimony regarding the training all IMPD officers underwent is relevant to Officer Rogers' state of mind and Mr. Johnson's *Monell* claims against the City. *See, e.g.*, *Christian*, 673 F.3d at 709 (concluding that testimony regarding agents' training was lay testimony relevant to their state of mind). The Court therefore **SUSTAINS IN PART** and **OVERRULES IN PART** Mr. Johnson's objection to Exhibit 11.

## IV.
### SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse

party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not suffice to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court "need only consider the cited materials," Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit has "repeatedly assured the district courts that they are

not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## V.
### FACTS FOR SUMMARY JUDGMENT

As explained above, the facts which are properly before the Court are those supported by citation to admissible evidence. Though permitted to "consider other materials in the record," Fed. R. Civ. P. 56(c)(3), the Court has not "scour[ed] every inch of the record" to expand the facts it may consider, *Johnson*, 325 F.3d at 898. It does not suffice, as Mr. Johnson has largely done, to simply list issues of legal application and brand them as "Disputed Factual Issues." [Filing No. 124-2 at 15 (including among his list of "Disputed Factual Issues" "[w]hether . . . Officer Rogers used excessive force against Mr. Johnson" and "[w]hether Officer Rogers' conduct constitutes gross negligence, recklessness or willful and wanton misconduct," among many others)]; *cf., e.g.*, *Little v. Cox's Supermarkets*, 71 F.3d 637, 640 (7th Cir. 1995) (noting insufficiency of "Statement of Genuine Issues" where party simply listed questions without any effort to "identify precise factual issues or to controvert [the moving party's] statements"). Both parties are represented by counsel, and the Court depends upon the attorneys to "marshal and present the court with the evidence [they] contend will prove [their] case. And by evidence, we mean evidence on which a reasonable jury could rely." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Mr. Johnson, as the nonmoving party, is entitled to all reasonable inferences in his favor drawn from the admissible evidence and otherwise undisputed facts. *See Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). "Existence in the record

of a videotape capturing the events in question" does not change this well-established procedure, though it does yield "an added wrinkle." *Scott v. Harris*, 550 U.S. 372, 378 (2007). Specifically, just as the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," the Court may not credit a party's story which is "blatantly contradicted by" the videographic evidence such that "no reasonable jury could believe it." *Id.* at 380. In such circumstances, the Court may not take the nonmovant's story at face value but instead must "view[] the facts in the light depicted by the videotape." *Id.* at 381.

With these principles in mind, the Court may at last turn to the evidence properly before it.

### A. Officers Called to Community Health Services

On October 30, 2014, Mr. Johnson visited Community Health Services ("CHS"), where he had been attending mental health and substance abuse counseling. [Filing No. 1-1 at 2]; *see, e.g.*, *Help At Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001) (noting that opposing parties may rely upon judicial admissions in complaint). On this occasion, Mr. Johnson arrived after he had been drinking.[1] [Filing No. 106-5 at 4.] Cindy Bennett, Mr. Johnson's sister, arrived

---

[1] Mr. Johnson objects that "Defendants provided no admissible evidence to support" the allegation that he attended his appointment after drinking, arguing that Defendants only provided an inadmissible internal affairs statement to support the allegation and that "Defendants offered nothing to establish alleged intoxication other than a lay opinion." [Filing No. 124-2 at 6.] The Court overrules this objection. First, it rests on an inaccurate premise. Defendants rely not only upon the inadmissible internal affairs report (the objection to which the Court sustained), but also offered the testimony of Cindy Bennett, Mr. Johnson's sister, who observed Mr. Johnson at CHS before the incident with Officer Rogers; Officer Samuel House, who arrived on the scene with Officer Rogers and observed Mr. Johnson; and ultimately Mr. Johnson's own testimony. Second, "indicators [of intoxication] are well within the experience of the average adult," *Mowrey v. City of Fort Wayne*, 2013 WL 6512664, at *6 (N.D. Ind. 2013) (quoting *Acevedo v. Canterbury*, 2004 WL 1166602, at *1 (N.D. Il. 2004)), making it a proper subject for lay opinion testimony, *see* Fed. R. Evid. 701. Third, Mr. Johnson lodges no specific objection to Ms. Bennett's or Officer House's deposition testimony, such as to the foundational requisites under Rule 701. *See* Fed. R. Evid. 103(a)(1)(B) (parties must "state[] the specific ground" to preserve evidentiary objections). Even if Mr. Johnson had made a specific objection, it would be overruled. Both testified that they could smell alcohol on Mr. Johnson's breath and that they believed him to be intoxicated based upon the

at CHS to pick up Mr. Johnson and found that he had been drinking and was upset. [Filing No. 106-5 at 4.] Ms. Bennett told the guard at CHS to call the police and left without Mr. Johnson. [Filing No. 106-5 at 4.]

Officer Samuel House and Officer Rogers, both of the IMPD, responded to a radio call for trouble with a person.[2] [Filing No. 106-2 at 5-6.] They arrived to CHS about the same time, and Officer House found Mr. Johnson smelling of alcohol. [Filing No. 106-2 at 11.] After observing Mr. Johnson and his intoxication and learning from a security officer about Mr. Johnson's conduct at CHS,[3] Officer House placed Mr. Johnson under arrest. [Filing No. 106-2 at 17.] In particular, Officer House was concerned by Mr. Johnson's demeanor and the way he was glaring at the CHS security officer. [Filing No. 106-2 at 11; Filing No. 106-2 at 13.] Based on his assessment of the situation, Officer House decided to handcuff Mr. Johnson. [Filing No. 106-2 at 11; Filing No. 106-2 at 13.]

---

way he was talking, [Filing No. 106-5 at 4-8; Filing No. 106-2 at 11], both of which are observations "rationally based on the witness[es'] perception" which support their statements that Mr. Johnson was intoxicated. Fed. R. Evid. 701(a). In the end, Mr. Johnson even admitted at his deposition that he could not remember the details of the incident because he been drinking, rendering his objection on this point completely unpersuasive and perhaps frivolous. [See Filing No. 106-4 at 5-6.] Finally, in light of the fact that Mr. Johnson has designated no evidence to contradict Defendants' assertion (such as denial under oath), the fact that Mr. Johnson had been drinking is undisputed and properly considered by the Court.

[2] Again, Mr. Johnson incorrectly objects that Defendants supported this statement with only inadmissible internal affairs statements. [See Filing No. 124-2 at 6.] Rather, Defendants additionally cited to the deposition testimony of Officer House. Additionally, the Court overrules Mr. Johnson's hearsay objection regarding the radio call about a troublesome individual because the statement is offered not to prove that Mr. Johnson was in fact causing trouble, but as evidence of the officers' state of mind when they arrived at CHS. See Fed. R. Evid. 801(c)(2); see, e.g., *United States v. Sanchez*, 32 F.3d 1002, 1005 (7th Cir. 1994) (affirming admission of out-of-court statement which was "not offered to prove the truth of the matter asserted, but only to prove why [the individual] acted as he did").

[3] Again, any hearsay objection regarding what the security officer told Officer House is overruled because it is offered not for the truth of the matter asserted, but to demonstrate the officers' state of mind. The authenticity objections to the internal affairs reports were addressed above.

**B.  Incident Between Mr. Johnson and Officer Rogers**

Somewhere along the line, Officer House escorted Mr. Johnson out of CHS and near his car.  [Filing No. 106-2 at 17.]  Officer House initially placed Mr. Johnson near the front of his car so that he could perform a search incident to arrest.  [Filing No. 106-2 at 18.]  Officer House was initially okay with Mr. Johnson standing up, but then Mr. Johnson began threatening to run, such that the officers were going to have to "get him and beat him up."[4]  [Filing No. 106-2 at 50.]  Mr. Johnson also threatened the security guard, telling him that he would "beat his ass with his hands behind his back," and Officer Rogers, calling him a "n*****" and telling him that he would "break my neck and things in that aspect [sic]."  [Filing No. 106-3 at 8.]  After completing the search incident to arrest and hearing Mr. Johnson's comments, Officer House sat Mr. Johnson on the ground by his car.  [Filing No. 106-2 at 50; Filing No. 106-3 at 8.]  Though Officer Rogers could not explain how Mr. Johnson could have harmed the officers had they put him in one of their cars, they elected to leave Mr. Johnson seated outside.  [Filing No. 124-1 at 86.]

At the 33:37 mark of the surveillance video, [Filing No. 106-1], Mr. Johnson stood up from his seated position by Officer House's car.[5]  Officer House then took Mr. Johnson and escorted

---

[4] Again, Mr. Johnson incorrectly asserts that Defendants support many of their factual assertions regarding Mr. Johnson's behavior solely with inadmissible evidence.  The Court, as explained above, has only considered, relied upon, and cited the admissible evidence contained in Officer House's deposition, Officer Rogers' deposition, and the surveillance video in describing Mr. Johnson's actions.  Moreover, the Court has ignored any factual assertions where Defendants have apparently augmented the record evidence with an unsupported assertion (such as by asserting that Officer House "[r]ealiz[e]d that the vehicle enabled Johnson to get into a standing position," [Filing No. 108-1 at 6], a claim which is not supported by the cited evidence).

[5] Mr. Johnson does not cite any evidence to support his assertion that he "told the officers he was cold" before he stood up the first time.  [Filing No. 124-2 at 15.]  The Court grants Mr. Johnson's request to take judicial notice that the air temperature on October 30, 2014 ranged from 35 to 52 degrees, [*see* Filing No. 124-1 at 126], though this fact is immaterial to resolving the pending motions.

him backwards to a grassy area by a curb just a few paces away from the police cars. [Filing No. 106-2 at 27; Filing No. 106-1 at 33:37-33:58.] Officer House laid Mr. Johnson on his back and returned to his car to continue the paperwork for Mr. Johnson's arrest. [Filing No. 106-1 at 33:58.] One of the officers told Mr. Johnson to stay seated. [Filing No. 106-3 at 15.] At some point, having watched Mr. Johnson stir in the grassy area, Officer House asked Officer Rogers to make sure that he was watching Mr. Johnson. [Filing No. 106-2 at 30.]

At 34:43 in the surveillance footage, Mr. Johnson began to work his way to his knees, and then to his feet. [Filing No. 106-1 at 34:43-34:48.] Officer Rogers, who was nearby at his car, walked to Mr. Johnson and told him, "Look, man, we told you to sit down." [Filing No. 106-3 at 15.] Mr. Johnson immediately started to move away from Officer Rogers, at which point Officer Rogers physically engaged him, grabbing his handcuffs with his left hand. [Filing No. 106-1 at 34:49.] This grabbing of the handcuffs, which Mr. Johnson says resulted in the handcuffs being lifted, caused Mr. Johnson pain.[6] [Filing No. 118-4 at 2.] Mr. Johnson pulled away, saying "F*** you" to Officer Rogers as he did so. [Filing No. 106-3 at 15; Filing No. 106-1 at 34:49-34:50.] Officer Rogers commanded Mr. Johnson to stop resisting. [Filing No. 106-2 at 32.] Officer Rogers pulled him back, and Mr. Johnson pulled away again. [Filing No. 106-1 at 34:52.] Officer Rogers attempted to regain control over Mr. Johnson, this time extending his right foot and leg toward Mr. Johnson's right leg, as if to trip or destabilize him. [Filing No. 106-1 at 34:52.] Mr. Johnson pulled away a final time, taking another step away from Officer Rogers. [Filing No. 106-1 at 34:52-34:53.] Officer Rogers then braced himself, pulled back on Mr. Johnson, and again stuck his right foot and leg out at Mr. Johnson's right leg. [Filing No. 106-1 at 34:53.] This time, Officer

---

[6] Mr. Johnson does not aver, as he suggests in his response brief, that he "was merely reacting to" this pain when he pulled away from Officer Rogers, nor do his averments reasonably raise such an inference. [Filing No. 124-2 at 8.]

Rogers was able to take Mr. Johnson down over to the left, face down onto the pavement. [Filing No. 106-1 at 34:55.] Officer Rogers disengaged, and Officer House helped Mr. Johnson back onto the grass. [Filing No. 106-1 at 34:56-35:10.] A few seconds later, Mr. Johnson, having suffered a compound fracture of his right tibia and fibula from one of Officer Rogers' efforts to take him down during the fracas, again sat up on the grass. [Filing No. 106-1 at 35:13; Filing No. 1-1 at 3.] The entire encounter between Officer Rogers and Mr. Johnson lasted 6 seconds. [Filing No. 106-1 at 34:49-34:55.]

**C. Aftermath of Incident**

Both officers attempted to check on Mr. Johnson's condition after the incident, but Mr. Johnson refused. [Filing No. 106-3 at 24; Filing No. 106-2 at 39.] Instead, Mr. Johnson said to Officer Rogers, "N*****, you did break my leg. I'm going to sue you. . . . I'm going to own you. And, look, Kunta Kinte broke my leg." [Filing No. 106-3 at 24.] Mr. Johnson did not tell either officer that he was in pain. [Filing No. 106-3 at 26.] Officer Rogers noticed that Mr. Johnson's leg did not look right and called for medical assistance. [Filing No. 106-3 at 23-24.] When the medics arrived, Mr. Johnson initially insisted that no one could touch him and that they should "f*** off." [Filing No. 106-2 at 41.] Mr. Johnson was eventually transported to Eskenazi Hospital and diagnosed with a compound fracture. [Filing No. 106-2 at 43-44; Filing No. 1-1 at 3.]

As Mr. Johnson testified at his deposition, his memory of the October 30, 2014 incident is quite limited, at least in part due to his alcohol consumption. [Filing No. 106 at 6.]

As a result of Mr. Johnson's conduct on October 30, 2014, Mr. Johnson pleaded guilty in Marion Superior Court to resisting law enforcement in violation of Indiana Code section 35-44.1-3-1(a)(1) and to intimidation where threat is to commit a forcible felony in violation of Indiana Code section 35-45-2-1(a)(2). *See* Sentencing Order, *State v. Johnson*, No. 49G09-1411-

F6050357 (Marion Super. Ct. Mar. 2, 2017), *available at* https://public.courts.in.gov/mycase#/vw/Search (search by "Case Number").

### D. IMPD Training and Policies

IMPD officers receive training on de-escalation and use of force, consistent with the Supreme Court's directive in *Graham v. Connor*, 490 U.S. 386 (1989). [Filing No. 106-11 at 2-3.] Officers are trained to "ground" a resisting individual to minimize their "tactical options" for resistance. [Filing No. 106-11 at 3.] In order to ground a resisting individual, officers are taught to use leverage and "[b]alance [d]isplacement," moving the individual's "center of gravity . . . beyond the stability of the feet." [Filing No. 106-11 at 3-4.]

At his deposition, Officer Rogers was unable to "tell [counsel] verbatim what the force continuum is." [Filing No. 124-1 at 97.][7] He explained that, in general, he was permitted to use "force that's . . . reasonable for the situation at hand." [Filing No. 124-1 at 100.] The City's Rule 30(b)(6) deponent essentially agreed with the testimony Officer Rogers provided at his deposition. [Filing No. 124-1 at 68.]

Officers have discretion under IMPD policies to choose where to keep arrestees pending transport for processing, though it can make sense to keep an arrestee handcuffed and seat belted

---

[7] Reviewing the limited evidence provided by Mr. Johnson was made considerably more difficult due to his failure to separate the exhibits into separate attachments and his failure to pincite to the ECF-generated page numbers, as required by the Local Rules and the undersigned's Practice and Procedures. S.D. Ind. L.R. 5-6(a)(1) ("Each electronically filed exhibit to a main document must be[] created as a separate .pdf file . . . ."); [Filing No. 7 at 4].

in the back of a police car, which makes it very difficult to flee. [Filing No. 124-1 at 77-78.][8] IMPD

makes "its best effort to equip every car with a . . . blanket . . . ." [Filing No. 124-1 at 78.][9]

### E. Expert Testimony

Mr. Johnson has tendered the expert witness affidavit of Roger Clark. [Filing No. 124-1 at 5-12.] His opinions are premised upon the factual conclusions that "Officer Rogers forcefully grabbed Mr. Johnson, and forced him into the hard cement ground by kicking his leg," all while "Mr. Johnson . . had been compliant[] and no threat to Officer Rogers' safety." [Filing No. 124-1 at 10.] Among other things, Mr. Clark opines that "[o]fficers know from experience that lifting the handcuffed hands and arms in [the way Mr. Clark believes that Officer Rogers did] causes extreme pain at the shoulder joints, and will cause the shoulder joints to dislocate and/or fracture . . . . The technique used by Roger [sic] by pulling up on Mr. Johnson's arms handcuffed from behind was dangerous and an inappropriate means of obtaining control in this setting and circumstance." [Filing No. 124-1 at 11.] According to Mr. Clark, "Other techniques and means were available to obtain compliance including requesting assistance of Officer House who was steps away on the scene or through the use of pressure points in obtaining compliance." [Filing No. 124-1 at 10.] Finally, Mr. Clark opines that IMPD's conclusion that the force used was reasonable "indicates that the customs and practices of the IMPD encourage/allow their [sic] Officers to ignore training standards and use excessive force." [Filing No. 124-1 at 11.]

---

[8] Nowhere in the portion of Robert Pearcy's deposition testimony to which Mr. Johnson cites does he testify that the "standing operating procedure . . . is . . . placing the detainee in a squad car," as Mr. Johnson asserts. [Filing No. 124-2 at 15.] Nor is that a reasonable inference from Robert Pearcy's testimony.

[9] Nowhere in the portion of Robert Pearcy's deposition testimony to which Mr. Johnson cites does he testify regarding Officer Rogers' inability to provide Mr. Johnson a blanket. [Filing No. 124-2 at 17.] Nor does any testimony to which Mr. Johnson cites support his assertion that "[p]roviding a blanket could have avoided the circumstances leading to Mr. Johnson's injury." [Filing No. 124-2 at 17.]

## VI.
### DISCUSSION

As explained above, Mr. Johnson brings excessive force and related *Monell* claims under § 1983 and the Fourth Amendment and brings direct and *respondeat superior* tort claims under state law. The Court first addresses Mr. Johnson's federal claims before turning to his state-law claims.

### A. Section 1983 Claims

Defendants raise several arguments as to why Mr. Johnson's § 1983 claims fail. The first is the affirmative defense of qualified immunity, which applies only to Mr. Johnson's claim against Officer Rogers. Second, Officer Rogers raises an affirmative defense under *Heck v. Humphrey*, 512 U.S. 477 (1994). Finally, Defendants argue that Mr. Johnson's *Monell* claim against former Chief Riggs and the City fails on the merits. The Court addresses each argument in turn.

#### 1. Qualified Immunity

Officer Rogers argues that he is entitled to qualified immunity because Mr. Johnson cannot establish that Officer Rogers' actions violated a clearly-established constitutional right. [Filing No. 108-1 at 19-22.] In response, Mr. Johnson disputes Officer Rogers' characterization of the incident and argues that Officer Rogers' actions clearly violated his right to be free from excessive force. [Filing No. 124-2 at 18-22.] In reply, Officer Rogers argues that the cases to which Mr. Johnson cites fail to establish that his actions violated clearly established law. [Filing No. 126 at 11-14.]

Under the doctrine of qualified immunity, government officials may be held liable only when they "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation omitted). The doctrine "protects all but the plainly incompetent or those who knowingly

violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation omitted). The plaintiff bears the burden of overcoming a claim to qualified immunity by "demonstrat[ing] that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate'" or that the conduct was "'so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully.'" *Dockery v. Blackburn*, 911 F.3d 458, 466-67 (7th Cir. 2018) (first quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), then quoting *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 723-24 (7th Cir. 2013)).

"Under [the Supreme Court's] cases, the clearly established right must be defined with specificity," a principle which is "particularly important in excessive force cases." *City of Escondido v. Emmons*, 2019 WL 113027, at *2 (U.S. 2019) (per curiam) (publication pending). As the Supreme Court has explained,

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.
>
> It does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*Id.* at *2-3 (quoting *Kisela*, 138 S. Ct. at 1153). Among the issues for which governing precedent must account in excessive force cases are the actions of the individual claiming wrongdoing and the time the officer had to react to the situation. *See, e.g.*, *Kisela*, 138 S. Ct. at 1153 (holding that qualified immunity was required for officer who shot individual after having "mere seconds to

assess the potential danger" posed by individual to their person, who was observed "hacking a tree with a large kitchen knife," and who had "failed to acknowledge at least two commands to drop the knife"); *Dockery*, 911 F.3d at 461 (affirming repeated use of Taser where plaintiff "kicked, attempted to stand up, and otherwise resisted commands to submit to their authority"); *see also, e.g.*, *Mason-Funk v. City of Neenah*, 895 F.3d 504, 510 (7th Cir. 2018) ("To drive home the point, it is worth recounting what occurred in the short span of six minutes.  Flathoff had continuously made threats that he would kill the hostages . . . ."); *cf., e.g.*, *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

    *Graham v. Connor*, which sets forth the long-established factors to consider in evaluating a claim for excessive force, "do[es] not by [itself] create clearly established law . . . ."  *Kisela*, 138 S. Ct. at 1153.  Nonetheless, those factors provide the appropriate starting place for evaluating the reasonableness of Officer Rogers' actions.  *Graham* requires the Court to consider "the nature and extent of the force used against the severity of the suspect's crime, the nature and immediacy of the threat he posed to the officers or others, and the extent to which the suspect actively resisted or attempted to evade arrest."  *Dockery*, 911 F.3d at 464 (citing *Graham*, 490 U.S. at 396).  These factors must be evaluated from the "perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' and allowing for the fact that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"  *Id.* (quoting *Graham*, 490 U.S. at 396-97).

In the Seventh Circuit's December 19, 2018 decision in *Dockery*, the court addressed a resisting arrest/excessive force case much like this one. There, in addressing whether the officer's conduct violated clearly established law, the Court observed as follows:

> We have two guideposts in an excessive-force case like this one. The first is that an officer's use of a Taser against an actively resisting subject either does not violate a clearly established right or is constitutionally reasonable. [*Abbott*, 705 F.3d at 723-24]. Examples of active resistance include "kicking and flailing," *Clarett v. Roberts*, 657 F.3d 664, 674-75 (7th Cir. 2011); declining to follow instructions while acting in a belligerent manner, *Forrest v. Prine*, 620 F.3d 739, 745-46 (7th Cir. 2010); and swatting an arresting officer's hands away while backpedaling, *Brooks v. City of Aurora*, 653 F.3d 478, 481 (7th Cir. 2011).
>
> The second guidepost is that an officer may not use significant force (like a Taser) against a "nonresisting or passively resisting" subject. *Abbott*, 705 F.3d at 732. For example, we have rejected a claim of qualified immunity where officers used force against a "docile and cooperative" suspect who posed no threat and "did not resist arrest in any way." *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003). In another case falling on the extreme side of this line, we have held that "[t]he Constitution clearly does not allow police officers to force a handcuffed, passive suspect into a squad car by breaking his ribs." *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995).

*Id.* at 467. *Dockery* itself provides a third guidepost. In that case, an officer "tazed" Mr. Dockery when he fought with officers attempting to handcuff him. *Id.* at 463. That use of force was clearly protected by qualified immunity in light of video evidence showing "that Dockery was uncooperative and physically aggressive." *Id.* at 467. More relevant to this case is that the officer discharged the Taser at Mr. Dockery three more times because even after being hit with the Taser he "ignored the officers' instructions to lie down," exhibited "combative demeanor," and "did nothing to manifest submission to being handcuffed." *Id.* at 468. The court held that this use of force fell closer to the first "guidepost" regarding the use of force against actively resisting individuals and held that "[e]ven if the officers misconstrued [Mr. Dockery's] actions or misjudged the amount of force needed to subdue him, qualified immunity protects officers from mistakes in judgment of this sort." *Id.* at 468-69.

Applying the doctrine of qualified immunity to this case requires that the Court "analyze whether clearly established law barred Officer [Rogers] from . . . taking down" Mr. Johnson in the manner demonstrated in the surveillance video, under the circumstances presented to Officer Rogers. *City of Escondido*, 2019 WL 113027, at *4. And this is the proper phrasing of the issue before the Court. *See id.* It is not, as Mr. Johnson repeatedly suggests in his brief, whether Officer Rogers had "Constitutional authority to . . . break Johnson's leg," [Filing No. 124-2 at 8], or was justified in "inflicting serious bodily harm," [Filing No. 124-2 at 10]. No review of the surveillance video could reasonably lend itself to the inference that Officer Rogers decided to "break Johnson's leg" or "inflict[] serious bodily harm" as a means of controlling Mr. Johnson when, despite orders to remain seated, he stood up and started away from the grassy area by the curb. Nor is the mere result of serious and "obvious injuries" indicative of an "apparent excessive use of force." [Filing No. 124-2 at 12.] That, of course, was the end result of Officer Rogers' use of force as it met with Mr. Johnson's resistance, but the Fourth Amendment analysis requires that the Court evaluate the use of force prospectively—without the "20/20 vision of hindsight." *Dockery*, 911 F.3d at 464 (citing *Graham*, 490 U.S. at 396); *cf., e.g.*, *Rambo*, 68 F.3d at 207 (noting the flip side of the coin that a "significant injury is not required for Fourth Amendment excessive force claims" and agreeing that qualified immunity was inappropriate where police officers punched plaintiff who refused to enter police car but "did not attempt to flee or physically resist").

These observations eviscerate another dominant theme in Mr. Johnson's briefing—that Officer Rogers' conduct could be fairly characterized as "kicking" at Mr. Johnson as if attempting to cause him gratuitous injury, all while Mr. Johnson presented no risk. [*See, e.g.*, Filing No. 124-2 at 9 ("Rogers kicked Johnson's lower leg with significant force . . . ."); *id.* ("Officer Rogers kicked Johnson in the leg as shown in the video surveillance . . . .").] Specifically, the video and

other undisputed evidence provides as follows: Mr. Johnson had been identified by CHS personnel as a troublesome individual; smelled of alcohol; was threatening bodily harm to, and cursing Officer Rogers with, racist slurs; and threatened to run away to make the officers chase him and "beat him up." [Filing No. 106-2 at 50.] Mr. Johnson had already once stood up after being seated by Officer House by his police car. The physical engagement began in the blink of an eye, with Mr. Johnson standing up and stepping away from Officer Rogers, who responded by grabbing the handcuffs. Only after his initial efforts to regain control failed did Officer Rogers stick his leg out to attempt to destabilize Mr. Johnson—while the Court excluded the opinion portions of Officer Sullivan's affidavit, the video comports exactly with Officer Sullivan's factual testimony regarding training on destabilization techniques, and flatly contradicts Mr. Johnson's version of the events.

In fact, the parties' dispute over terminology misses the point. Even if the Court were to adopt Mr. Johnson's mischaracterization of Officer Rogers' actions as "kicks" or "strikes" at Mr. Johnson's leg area, Officer Rogers would remain entitled to qualified immunity because the video footage demonstrates that these actions—whatever they may be called—were reasonable efforts to gain control over and take down the resisting Mr. Johnson. The only reasonable characterization of the footage is that of an officer struggling to gain compliance over a recalcitrant and resisting individual (to which Mr. Johnson admitted by pleading guilty to resisting a law enforcement officer)—much like the situation in *Dockery* where the officers were entitled to qualified immunity for repeatedly discharging a Taser at an resisting individual who was combative, was ignoring repeated instructions to lie down, and did not indicate any willingness to be handcuffed. Mr. Johnson, ignoring the fact that he pleaded guilty to resisting law enforcement, attempts to emphasize that he was not a risk to the officers. The risk was certainly minimized by his

handcuffs.[10]  But Mr. Johnson's oral threats—including a specific threat to flee, previous and ongoing refusal to comply with the officers' orders, and physical combativeness when Officer Rogers initially engaged him—place Officer Rogers' conduct comfortably within the range of conduct protected by qualified immunity.

This conclusion is further mandated by Mr. Johnson's failure to meet his burden to identify any factually analogous case which establishes that Officer Rogers' conduct violated his clearly-established constitutional rights.  The two cases to which Mr. Johnson cites bear no resemblance to this one.  First, *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997), was before the Seventh Circuit only on the pleadings, and the complaint sufficiently alleged that a police officer violently "push[ed] and poke[d]" the plaintiff, without provocation, during a traffic stop. *Id.* at 475.  Reliance upon that case, where no force would have been justified, is completely belied by Mr. Johnson's stated recognition that "*some* force" would have been appropriate in this case, [Filing No. 124-2 at 21], as well as the myriad factual and procedural distinctions between the cases.  The second case, *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002), compares no more favorably.  While *Herzog* was decided on summary judgment, it again involved a fully-compliant individual who was shoved and placed in overly-tight handcuffs, which the officers refused to loosen after the plaintiff complained. *Id.* at 1043.  The threats and physical resistance of this case all absent from *Herzog*.

In the end, Mr. Johnson attempts to portray Officer Rogers as needlessly kicking him despite him being physically compliant (or at least no more than passively resistant in simply standing up from his seated spot).  These contentions fail both upon review of the video

---

[10] Mr. Johnson's suggestion that the officers were required to place Mr. Johnson in one of their vehicles while processing his arrest is completely unsupported by any case law, meaning that the argument cannot defeat qualified immunity.

surveillance, which shows Mr. Johnson immediately starting away from and then struggling with Officer Rogers, and Mr. Rogers' conviction for resisting law enforcement. "Even if [Officer Rogers] misconstrued [Mr. Johnson's] actions" as an attempt to flee "or misjudged the amount of force needed to subdue him, qualified immunity protects officers from mistakes in judgment of this sort." *Dockery*, 911 F.3d at 468-69. Section 1983 does not provide a mechanism for second-guessing law enforcement responses to physically resisting individuals. The Court therefore **GRANTS** Officer Rogers' Motion for Summary Judgment as to Mr. Johnson's § 1983 claim against him.

### 2. *Heck* Defense

Officer Rogers next argues, as an additional basis for summary judgment on Mr. Johnson's excessive force claim, that Mr. Johnson may not maintain his § 1983 claim without violating *Heck v. Humphrey*, 512 U.S. 477 (1994), by improperly contradicting his state-court conviction for resisting law enforcement. [Filing No. 108-1 at 15-19.] In response, Mr. Johnson cursorily yet correctly suggests that individuals convicted of resisting arrest may still bring claims for excessive force based upon the officer's conduct during the incident. [Filing No. 124-2 at 21.] In reply, Officer Rogers points out that Mr. Johnson's factual assertions contradict his guilty plea, meaning that the *Heck* bar applies. [Filing No. 126 at 10-11.]

The Supreme Court's *Heck* decision requires a district court to "dismiss a § 1983 action if a judgment in favor of the plaintiff in that § 1983 action would necessarily imply the invalidity of his criminal conviction or sentence." *Helman v. Dunhaime*, 742 F.3d 760, 762 (7th Cir. 2014). As Officer Rogers acknowledges,

> As a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not per se Heck-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation. A contrary conclusion would imply that once a person resists law

enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages.

*McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (internal citations and quotation omitted). This does not mean, as Mr. Johnson's broad argument suggests, that a plaintiff with a conviction for resisting law enforcement has *carte blanche* to sue on an excessive force theory. Rather, the Court must evaluate the plaintiff's **factual claims**—and not just the theory of § 1983 liability—to ascertain whether the plaintiff's success on those claims would "necessarily imply the invalidity of the criminal conviction." *Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016). "It is irrelevant," moreover, whether the plaintiff "disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit. He is the master of his ground." *Id.* at 244 (quoting *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)) (internal citations omitted).

The Court begins its *Heck* analysis by examining the offense to which Mr. Johnson pleaded guilty. *See Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008). Mr. Johnson pleaded guilty to resisting law enforcement in violation of Indiana Code section 35-44.1-3-1(a)(1), which provides:

> (a) A person who knowingly or intentionally:
>> (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties[] . . .
> commits resisting law enforcement . . . .

Ind. Code § 35-44.1-3-1(a). As Indiana courts have explained, "The term 'forcibly' is a distinct element of the offense that modifies all three verbs 'resists, obstructs, or interferes,'" which "includes 'at a minimum, some physical interaction with a law enforcement officer'" presenting a threat of force or "'imminent danger of bodily injury to an officer.'" *A.A. v. State*, 29 N.E.3d 1277, 1281 (Ind. Ct. App. 2015) (first quoting *K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013), then

quoting *Macy v. State*, 9 N.E.3d 249, 253 (Ind. Ct. App. 2014), then quoting *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013)).

Here, Mr. Johnson's briefing fails to "remain 'agnostic' . . . about the findings in the criminal . . . proceeding," but instead strays far into factual contentions which, if correct, would upend his criminal conviction. *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (approving application of *Heck* where the plaintiff "came close" to denying facts essential to his conviction such that court had "real doubt concerning his intentions"). At several points in his briefing, Mr. Johnson appears to want it both ways. On the one hand, he argues that "*some* force" would have been appropriate under the circumstances—presumably in an effort to avoid *Heck*. [Filing No. 124-2 at 21.] But on the other hand, Mr. Johnson argues that he was "simply trying [to] stand in a stationary position because it was cold," presumably minimizing his resistance in an effort to avoid qualified immunity. [Filing No. 124-2 at 21.] This conflict demonstrates why *Heck* bars Mr. Johnson's claim. Rather than concede that he "forcibly resist[ed]" Officer Rogers' actions, or at least remain agnostic as to whether he did so, Mr. Johnson flatly denies that he "**forcibly**" did anything at all, such as by threatening force or placing Officer Rogers in imminent danger of bodily injury. Ind. Code § 35-44.1-3-1(a) (emphasis added). But Mr. Johnson pleaded guilty to doing just that, and he may not contradict that guilty plea without running into the *Heck* bar. The Court therefore **GRANTS** Officer Rogers' Motion for Summary Judgment as to Mr. Johnson's § 1983 claim on this additional ground.

### 3. *Monell* Claims

The City[11] argues that it is entitled to summary judgment on Mr. Johnson's claim under

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), because the

undisputed evidence demonstrates that IMPD adequately trains its officers and does not have a

policy, practice, or custom of permitting excessive force. [Filing No. 108-1 at 22-27.] In response,

Mr. Johnson argues that he has succeeded in identifying a practice and custom of insufficient

training and excessive force because "[t]he City's Rule 40([b])(6) deponent [Robert Pearcy] has

adopted Officer Rogers' position as [his] own." [Filing No. 124-2 at 22-23.] In reply, the City

argues that Mr. Johnson has not met his burden to demonstrate a genuine issue of material fact as

to his *Monell* claim. [Filing No. 126 at 14-15.]

The Supreme Court in *Monell* held that municipalities may be sued under § 1983 when

their actions violate the Constitution. 436 U.S. 658 (1978). The Court limited this liability to

actions that may be attributed to the municipality itself: "a municipality cannot be held liable solely

because it employs a tortfeasor . . . on a *respondeat superior* theory." *Id.* at 691. *Monell* "expressly

le[ft] further development of this action to another day," *id.* at 695, and subsequent cases have

clarified when municipalities may be held liable for constitutional violations. In *Board of the

County Commissioners v. Brown*, the Court distilled the *Monell* theory to three elements: First, the

plaintiff must identify an action attributable to the municipality itself. 520 U.S. 397, 403-04

(1997). *Brown* and other cases have identified three ways in which a municipality may "act":

written policies; widespread practices or customs; or other actions by a final decision maker. *Id.*

---

[11] Former Chief Riggs joins in the City's arguments, and this discussion applies with equal force to Mr. Johnson's official-capacity claims against him. The Court additionally **GRANTS** summary judgment to Former Chief Riggs because, as Defendants argue and Mr. Johnson does not contest, the claim against him is wholly duplicative of the claim against the City. *See Ball v. City of Muncie*, 28 F. Supp. 3d 797, 802 (S.D. Ind. 2014).

Second, the plaintiff must demonstrate that the "municipal action was taken with the requisite degree of culpability," *id.* at 404—specifically, that the "action was taken with 'deliberate indifference' as to its known or obvious consequences," *id.* at 407 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Finally, the plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404.  This requires that the evidence yield "an inference . . . that the municipality's indifference led directly to the very consequence" of the constitutional deprivation. *Id.* at 409-10.

Mr. Johnson's argument on the *Monell* issue is skeletal and unsupported by any authority aside from a citation to *Monell* itself for the general legal standard.  It therefore is a paradigmatic example of an argument which is "underdeveloped, conclusory, [and] unsupported by law." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).  "It is not the obligation of the court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (internal quotation omitted).  Rather, "our adversary system relies on parties to raise issues and present them in the appropriate manner." *Id.* at 191.  Mr. Johnson's failure to comply with this directive means that he has waived any opposition to the City's argument in favor of summary judgment on Mr. Johnson's *Monell* claim. *Id.*; *Puffer*, 675 F.3d at 718.

Even if Mr. Johnson's argument were not waived, it would not succeed on its merits. Nothing in the evidence suggests that the IMPD failed to train Officer Rogers (even if he could not explain the continuum of force to Mr. Johnson's satisfaction).  Nor does the IMPD's decision to back Officer Rogers in this case demonstrate a custom or policy of tolerating excessive force. Mr. Johnson's entire argument is premised upon his own inaccurate gloss on the video surveillance, which the Court rejected above.  At most, the IMPD (via the City's Rule 30(b)(6)

witness) endorsed its officer's decision to engage a combative man, who had been drinking and threatening others, with efforts to take him down after the man disobediently stood up and attempted to leave the scene. Nothing about that decision reflects deliberate indifference to Mr. Johnson's constitutional rights. Based upon his waiver and the lack of evidence supporting his claim, the Court **GRANTS** the City and Former Chief Riggs summary judgment as to Mr. Johnson's *Monell* claims.

### B. State Law Claims

Having resolved Mr. Johnson's federal claims, remaining are his state-law tort claims against Officer Rogers and the City. As Defendants explain, the Court may retain supplemental jurisdiction over state-law claims where substantial judicial resources have been expended or where the result of the state-law claims is clear. *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 480 (7th Cir. 2012). Mr. Johnson does not dispute that both of these conditions are met, and the Court agrees that they are. The Court begins by resolving Mr. Johnson's claims against Officer Rogers before turning to his *respondeat superior* claims against the City.

#### 1. Claims against Officer Rogers

Officer Rogers argues that he is entitled to immunity under the Indiana Tort Claims Act as to Mr. Johnson's battery and negligence claims. [Filing No. 108-1 at 29-30.] Mr. Johnson does not respond to this argument.

The Indiana Tort Claims Act ("ITCA") provides: "A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code 34-13-3-5(b). In light of the plain language of the ITCA, Mr. Johnson's failure to respond, and the "plausible reasons" set forth by Officer Rogers in favor of summary judgment, *see Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir.

1999), the Court **GRANTS** Officer Rogers' Motion for Summary Judgment as to Mr. Johnson's battery and negligence tort claims against him. *See Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) (holding that dismissal is appropriate where "claim of immunity under the Indiana Tort Claims Act [goes] unanswered" (internal citation omitted)); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (concluding that plaintiff waived claims by failing to respond to arguments on summary judgment).[12]

### 2. *Respondeat Superior* **Claims Against the City**

The final claims remaining are Mr. Johnson's *respondeat superior* tort claims against the City. As for Mr. Johnson's battery claim, the City argues that the evidence shows Officer Rogers engaging in justifiable force, such that the battery claim fails on its merits. [Filing No. 108-1 at 29.] Again, Mr. Johnson fails to respond in the face of a plausible argument. In short, under Indiana law, the standard for excessive force battery claims parallels the federal excessive force standard. *See O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000) (citing *Graham v. Connor* standard for excessive force tort claim). And while the Court in its discussion of Mr.

---

[12] As it turns out, the resolution of this issue as to Mr. Johnson's battery claim may not have been as straightforward had Mr. Johnson responded to it. *See generally Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010) (holding that Indiana Code section 34-13-3-3(8) (enforcement of law provision) did not grant immunity to municipality and suggesting that it did not grant immunity to individual officers; the court did not address or cite to Indiana Code section 34-13-3-5(b), the scope of employment immunity provision relied upon by Officer Rogers). There is a divergence of authority on the availability of officer immunity under section 34-13-3-5(b) for excessive force claims. *Compare Bowens v. City of Indianapolis*, 2014 WL 4680662, at *5-6 (S.D. Ind. 2014) (holding that officer was entitled to section 34-13-3-5(b) immunity while city was not entitled to section 34-13-3-3(8) immunity), *and Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 866 (S.D. Ind. 2006) (Hamilton, J.) (same), *with Hudkins v. City of Indianapolis*, 2015 WL 4664592, at *25 (S.D. Ind. 2015) (denying immunity on excessive force claim to both City and defendant officer under either sections 34-13-3-5(b) or 4-13-3-3(8)). As *Ball v. City of Indianapolis* holds, the Court need not wade into these complicated issues without proper briefing because Mr. Johnson's failure to respond to Officer Rogers' argument provides ample grounds for summary judgment in Officer Rogers' favor. 760 F.3d at 645.

Johnson's § 1983 excessive force claim did not go beyond the issue of violation of clearly established constitutional rights, its discussion of Officer Rogers' conduct as confirmed by the video evidence demonstrates that the City's arguments have the facial validity to which a response was required to stave off summary judgment. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017) ("Failure to respond to an argument generally results in waiver . . . ."); *Abrego*, 907 F.3d at 1012. Mr. Johnson has again waived any argument in opposition, and the Court therefore concludes that the City is entitled to summary judgment on Mr. Johnson's battery claim.[13]

Finally, the City argues that Mr. Johnson's negligence claim fails because Officer Rogers engaged in intentional, and not negligent, conduct; because the ITCA provides for immunity; and because Mr. Johnson was contributorily negligent. [Filing No. 108-1 at 30-32.] Mr. Johnson responds only to the final argument, asserting only that Officer Rogers may have acted willfully or wantonly, such that contributory negligence may not be a bar to his negligence claim. [Filing No. 124-2 at 24-25.]

Unlike with tort claims against private persons, "[t]ort claims against governmental units . . . are subject to the common law principle of negligence because Indiana's Comparative Fault Act does not apply to such entities." *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 516 (Ind. Ct. App. 2000); Ind. Code § 34-51-2-2. While Mr. Johnson is correct that "contributory negligence is [no] defense to willful and wanton conduct," *Young v. Baugh*, 870 F.2d 350, 355 (7th Cir. 1989), the surveillance footage defeats any argument that Officer Rogers acted willfully or recklessly in responding the way he did to Mr. Johnson's resistance. Again, Mr. Johnson's argument hinges

---

[13] By necessary logical extension, Mr. Johnson's failure to respond to the City's arguments on the merits of his *respondeat superior* battery claim provides another basis for summary judgment in Officer Rogers' favor.

solely on his rejected interpretation of the surveillance video. Rather, by acting and resisting the way he did, and by refusing to comply with the officers' orders, Mr. Johnson was contributorily negligent in his injuries, barring his negligence claim against the City, even assuming Officer Rogers even acted negligently.

Most importantly, however, Mr. Johnson fails to respond to the City's claim to immunity under the ITCA, Indiana Code section 34-13-3-3, which immunizes "[a] governmental entity . . . if a loss results from . . . [t]he adoption and enforcement of . . . a law . . . ." Ind. Code § 34-13-3-3(8).[14] As a result of Mr. Johnson's waiver, the Court **GRANTS** the City's Motion for Summary Judgment on Mr. Johnson's state-law claims. *See Ball*, 760 F.3d at 645; *Abrego*, 907 F.3d at 1012.

## VII.
### CONCLUSION

In the final analysis, Mr. Johnson's response to Defendants' Motion for Summary Judgment consists almost entirely of evidentiary objections, a story that is flatly contradicted by the surveillance video, and not much else. Collectively, these submissions fall far short of demonstrating a genuine issue of material fact. Though unfortunate, the mere fact that Mr. Johnson suffered a serious injury does not mean that Mr. Johnson has a legally-viable claim. Therefore, as thoroughly described above, the Court

- **GRANTS** Defendants' Motion for Summary Judgment [106],

- **GRANTS** Mr. Johnson's Motion for Leave to File His Amended Brief in Opposition to Defendants' Motion for Summary Judgment [124],

- **DENIES** Mr. Johnson's Request for Oral Argument [129], and

---

[14] As referenced in footnote 12, *Wilson v. Isaacs*, 929 N.E.2d 200, holds that Indiana Code section 34-13-3-3(8) does not immunize municipalities for excessive force batteries. That principle (which is not raised by Mr. Johnson) has no applicability to Mr. Johnson's negligence claim.

- **DENIES** Defendants' Motion to Strike Portions of Mr. Johnson's Surreply in Opposition to the Motion for Summary Judgment [133].

Additionally, given that this matter will proceed no further such that there will be no trial, the Court **DENIES AS MOOT** the parties' Joint Motion to Extend the Damages and Expert Discovery Deadline and to Continue March 11, 2019 Trial Setting [141] and Mr. Johnson's Alternative Motion to Quash Defendants' Notices of Deposition [142].

Because all claims have been fully resolved in Defendants' favor, final judgment consistent with the Entry shall enter.



Date: 1/15/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana




**Distribution via ECF only to all counsel of record**